IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLD REPUBLIC SURETY COMPANY, | CIVIL ACTION |
| Plaintiff, | CASE NO: 2:24-cv-02443-TJS |
| v. | |
| PETRONGOLO CONTRACTORS, INC, | |
| Defendant. | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Old Republic Surety Company ("Old Republic"), by its attorneys Dickie McCamey & Chilcote, P.C., files the within Brief in Support of Motion for Summary Judgment averring as follows:

**I.  STATEMENT OF UNDISPUTED FACTS**

Old Republic is a company licensed to conduct surety business in the Commonwealth of Pennsylvania. *(Mot. Exh. 4, ¶ 2)*

Defendant, Petrongolo is a construction contractor and has been in the business of construction since its incorporation in 1985*. (Doc. 1, ¶6; Doc. 16, ¶ 6).* On or before July 13, 2020, Petrongolo sought to obtain surety credit from Old Republic in the form of certain types of surety bonds. *(Doc. 1, ¶7; Doc. 16, ¶ 7).* The purpose of the surety bonds is to ensure the completion of identified projects and/or payment of certain subcontractors for the benefit of the obligees identified on the bonds. *(Doc. 1, ¶8; Doc. 16, ¶ 8).*

On or about July 13, 2020, Petrongolo and other corporate and individual indemnitors executed a general agreement of indemnity ("GAI") for the benefit of Old Republic.  On or about June 2, 2022, Petrongolo and other corporate and individual indemnitors executed an addendum to GAI, for the benefit of Old Republic.  *(Doc. 1, ¶¶ 9, 10; Doc. 16, ¶¶ 9, 10).*[1]  Exhibit 1 to the Complaint is a true and correct copy of the GAI between the parties *(Doc. 1, ¶¶ 11, 15-16; Doc. 16, ¶¶11, 15-16; Mot., Exh. 5, ¶¶ 1,2).*

The GAI requires Petrongolo and the other Indemnitors to indemnify and save Old Republic from and against any out of pocket loss.  *(Doc. 1, ¶¶ 11, 15-16; Doc. 16, ¶¶11, 15-16; Mot., Exh. 5, ¶¶ 1, 2).*

In consideration of the execution of the GAI, as well as other consideration, Old Republic issued a number of surety bonds including those listed on Exhibit 2 attached to the Complaint. (hereinafter, "Bonds").  *(Doc. 1, ¶17; Doc. 16, ¶17; Mot. Exhs. 4, ¶ 4; 5, ¶¶ 3,4).*

As per the terms of the GAI, Petrongolo is an "Indemnitor" for which the Surety executes a bond, and thereby also the "Principal."  *(Mot. Exh. 1, ¶ 1; Exh. 5, ¶¶ 1,2).*

Subsequent to the issuance of the Bonds, Old Republic received multiple claims against the Bonds, some of which are described on Exhibit 2 to the Complaint.  *(Doc. 1, ¶19; Doc. 16, ¶19; Mot. Exh. 4, ¶ 5).*

In response to claims submitted against the Bonds, Old Republic conducted an investigation.  In conjunction therewith, on February 8, 2024 counsel for Old Republic issued correspondence, attached to the Complaint as Exhibit 3, to counsel for Petrongolo and other

---

[1] Defendant pleads that the reference documents speak for themselves.

2

corporate and individual signatories demanding, *inter alia*, access to Petrongolo's books and records. *(Doc. 1, ¶24; Doc. 16, ¶24; Mot. Exhs. 3, 4 ¶7)*. Consistent therewith, the Court entered an injunction requiring Defendant to provide the requested records. *(Doc. 13)*.

In that same letter, Old Republic demanded reimbursement in the amount of $1,365,608.99. To date, no payment has been received by Old Republic from Petrongolo or any other Indemnitor. *(Mot. Exh. 4, ¶¶ 7,8)*

In conjunction with its investigation of the Bond claims and, in an attempt to prosecute the rights granted in the GAI and Doc. 13, Old Republic incurred "Expense" as defined in the GAI through its retention of:

    A.    MDD, a forensic accounting firm to investigate:

        1.    the financial status of the projects; and,

        2.    Petrongolo's ability to pay the claims asserted against Old Republic;

    B.    J.S. Held, LLC, a construction consulting firm to investigate the status of the physical work on the bonded projects; and

    C.    Counsel to assist Old Republic, including enforcement of its rights under the GAI. *(Mot. Exh. 4, ¶ 6)*.

As a result of these investigations, Old Republic concluded that payment was due and issued payment. Through January 14, 2025, the amount of claims paid by Old Republic arising out of the Bonds is $2,305,103.06. *(Mot. Exh. 4, ¶ 9)*.

Through January 14, 2025, the total amount of expense incurred by Old Republic is 121,591.58. *(Mot. Exh. 4, ¶ 11)*.

## II.     **RELEVANT PORTIONS OF THE GAI.**

The GAI binds Petrongolo to various obligations for the protection of Old Republic, including the following:

> The Indemnitor shall continually indemnify and save the Surety harmless from and against every claim, demand, loss, cost, charge, suit, judgment and expense, including but not limited to attorney's fees, investigative costs, etc., which the Surety may pay sustain or incur in consequence of having executed or procured the execution of Bond(s), or the failure of the Indemnitor, to perform or comply with the covenants and conditions of this Agreement to enforce the right of the Surety to any collateral taken specifically or otherwise, to enforce any and/or all obligations of the Indemnitor under the Agreement . . . . *(Mot. Exhs. 1, ¶ III, B;  5, ¶¶ 1,2).*

"Expense" as defined by the GAI "means any and all expense, including but not limited to investigative charges, accounting charges, engineering charges, fees and disbursement of counsel (whether on salary, retainer or otherwise.)" *(Mot. Exhs. 1, ¶ 1;. 5, ¶¶ 1,2).*

Pursuant to the GAI,  Petrongolo granted Old Republic the "exclusive right for itself, [Petrongolo] and the other Indemnitors to determine whether any claim, demand, suit, or judgment brought against the Principal and/or Surety upon any bond executed by the Surety shall on the basis of liability, expediency or otherwise, be paid, settled, defended, or appealed and its determination shall be conclusive upon [Petrongolo] and/or Indemnitor*." (Mot. Exhs. 1, ¶ III, B;. 5, ¶¶ 1,2).*

Further, Petrongolo, as Principal and a corporate Indemnitor agreed to reimburse Old Republic for all losses, costs and fees incurred, to-wit: "Payment shall be made by the Indemnitor to the Surety for 1. all loss, cost and expenses as soon as the Surety becomes

liable whether actually paid by the Surety in whole, any part thereof, or not, and; 2. Interest on any payments made by Surety referred to in 1. above from the date of payment by Surety until Surety is reimbursed by Indemnitor. *(Mot. Exhs. 1, ¶ III, B; 5, ¶¶ 1,2).*

Petrongolo agreed that a voucher or other evidence of payment was prima facie evidence of the propriety of the payment and the Indemnitors' agreement to reimburse Old Republic, to-wit: "The Indemnitor agrees to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Surety." *(Mot. Exhs. 1, ¶ III, B; 5, ¶¶ 1,2).*

Petrongolo has failed to satisfy its contractual obligation to reimburse Old Republic.

There is no genuine issue of material fact. Plaintiff is entitled to Summary Judgment in the amount requested against all Defendants.

III.     **QUESTION PRESENTED**

**IS SUMMARY JUDGMENT APPROPRIATE WHERE DEFENDANTS HAVE AGREED TO REIMBURSE SURETY FOR LOSSES SUSTAINED PURSUANT TO THE INDEMNITY AGREEMENT?**

**Answer: Yes.**

IV.     **LEGAL ARGUMENT**

   A.     **STANDARD**

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact

is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex v. Catrett*, 477 U.S. 317, 329 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 (3d Cir. 1990).

      B.     **DEFENDANTS AGREED TO REIMBURSE SURETY**.

This motion involves the straight-forward application of fundamental principles of contract and surety law to a factual record free of material disputes. The Third Circuit has recognized that summary judgment is an appropriate method of resolving disputes concerning this very type of indemnification agreement. *United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir.1999) (applying Pennsylvania law).*

The GAI in this matter is one regularly used in the surety industry and the operative terms of such agreements have been routinely upheld by courts. *Frontier Ins. Co. v.*

6

*International, Inc., 124 F. Supp. 2d 1211 (N.D. Alabama 2000); Feibus, 15 F. Supp. 2d at 585; Fallon Electric Co. v. Cincinnati Ins. Co., 121 F.3d 125,127 (3d Cir., 1997); Fidelity & Dep. Co. of Maryland v. Bristol Steel & Iron Works, 722 F.2d 1160,1163 (4th Cir. 1983) (applying Pennsylvania law); International Fidelity Ins. Co. v. United Construction, Inc., 1992 U.S. Dist. LEXIS 6777 at *6-7 (E.D. Pa. 1992). Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins., 1989 U.S. Dist. LEXIS 5752 at *7-9 (E. D. Pa. 1989).*

Pursuant to the GAI, Old Republic has the "exclusive" right to determine whether any claims against a Bond shall be paid on the "basis of liability, expediency or otherwise" and its decision is "conclusive upon the Principal and/or Indemnitor." *(Mot. Exhs 1, ¶ III.B; 5, ¶¶ 1,2).*

The purpose of clauses in indemnity agreements which grant the surety the right to settle claims is to facilitate the handling of settlements by sureties and to obviate unnecessary and costly litigation with bond obligees or claimants. *Frontier Ins., 124 F. Supp. 1211, 1213* (*citing Transamerica Insurance Company v. Bloomfield, 401 F.2d 357, 363 (6th Cir. 1968)); Doster v. Continental Cas. Co., 268 Ala.123, 105 So. 2d 83 (1955). See also, General Accident Insurance Company of America v. Merritt-Meridian Construction Corp., 975 F. Supp. 511, 516 (S.D.N.Y. 1997); Associated Indemnity Corporation v. CAT Contracting, Inc., 964 S.W.2d 276 (Tex. 1998); Fidelity & Deposit Co. of Maryland v. Fleischer, 772 S.W. 2d 809, 815 (Mo. Ct. App. 1989).* The rationale underlying the broad discretion granted to a surety in the settlement of claims against its bonds is that the expense, delay and risk of loss to the surety are sufficient safeguards against an unwarranted payment by the surety. *Feibus, 15 F. Supp. 2d at 588; Merritt-Meridian Construction Corp., 975 F. Supp. 511, 516.*

7

Likewise, Petrongolo is obligated to "continually indemnify and save the Surety harmless" from any cost or fee, in consequence of the Surety issuing a bond or, incurred due to the failure of Petrongolo or any Indemnitor to comply with the GAI. *(Mot. Exhs 1, ¶ III.B; 5, ¶¶ 1,2)*.

Attendant to the discretion granted to Old Republic to: 1) resolve claims against the Bonds, and 2) incur expenses, Petrongolo agreed that Plaintiff satisfies its burden of proof for reimbursement by presenting a "voucher or other evidence" of payment which serves as "prima facie" evidence of the propriety of the payment and "the Indemnitor's liability therefore to the Surety." *(Mot. Exhs. 1, ¶ III.B;. 5, ¶¶ 1,2). )*.  Accordingly, the Frasier Declaration and the documents referenced therein are *prima facie* evidence of Petrongolo's liability, as an Indemnitor, to Old Republic. *(Mot. Exhs. 1, ¶ III.B;. 5, ¶¶ 1,2)*.

The District Court for the Eastern District of Pennsylvania was presented with an analogous situation in <u>United States Fidelity & Guaranty Co. v. Bilt-Rite Contractors, Inc., 2005 U.S. Dist. LEXIS 9299 (E.D. Pa. May 17, 2005)</u> *(applying Pennsylvania law)*. In <u>Bilt-Rite</u>, in exchange for surety credit from USF&G, defendant-contractor executed an indemnity agreement with plaintiff-surety. <u>Id. at *1</u>.

In reliance on the indemnity agreement, the surety subsequently issued performance and payment bonds on a project where defendant was the general contractor.  As a result of various problems on the project, the owner brought suit against defendant-contractor and plaintiff-surety seeking payment under the bonds. <u>Id. at *5</u>.  Ultimately, the surety resolved the owner's claims for $2.15 million, and filed suit against the indemnitors seeking the recovery of its costs associated with the investigation, defense and resolution of the claims arising out of the bonded projects in reliance of an indemnity agreement. <u>Id. at *8</u>.

8

Relying on the settlements and *prima facie* clauses in the indemnity agreement, plaintiff-surety was awarded summary judgment in the amount of $2,832,016.96, for all losses including expenses and attorney's fees. In so doing, the *Bilt-Rite* Court relied on an affidavit from the surety, which shifted the burden of proof to the indemnitor. *Id. at 10.*

It is well established that prima facie provisions in indemnity agreements are enforceable and operate to shift the burden of proof to the indemnitor to avoid liability. *Bilt-Rite, at *10-13 (citing Fallon Elec. Co. v. Cincinnati Ins. Co., 121 F.3d at 129.).*

In determining what an indemnitor must demonstrate to escape liability, the courts look to the language of the surety agreement. *Bilt-Rite, at *13 (citing Fallon Elec. Co., 121 F.3d at 129).*

In the process of awarding summary judgment, the *Bilt-Rite* Court rejected defendant's attempt to inject a "reasonableness standard" into the indemnity agreement. *Id. at *14 fn 8 (citations omitted).* Where an indemnity agreement contains no standard, bad faith or fraudulent payment is the sole limiting factor of a surety's enforcement of an indemnity agreement. *Bilt-Rite, at *15 n9 (citations omitted), RLI Insurance Co. v. Bennett Composites, Inc., 2005 U.S. Dist. LEXIS 26465 *19 (E.D. Pa. November 3, 2005) (applying Pennsylvania law)*

Bad faith is the <u>only</u> exception, regardless of whether the surety agreement contains a good faith obligation. *Insurance Company of North America v. Bath, 726 F. Supp. 1247 (Wyo. 1989) (applying Pennsylvania law) (relying on Fidelity and Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983)(applying Pennsylvania law).*

9

### 1. DEFENDANTS HAVE FAILED TO ESTABLISH THAT SURETIES' PAYMENTS WERE MADE IN BAD FAITH.

A surety's discretion in resolving claims is questioned <u>only</u> where it acts in bad faith, and the majority of courts, when evaluating a claim that a surety acted in bad faith, are in agreement that bad judgment or even gross negligence do not amount to bad faith. In <u>Feibus</u>, the court stated:

> Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. Thus, a lack of diligence or negligence is not the equivalent of bad faith, indeed even gross negligence cannot support a finding of bad faith. Bad faith requires a showing of recklessness or improper motive such as self-interest or ill will.

<u>15 F. Supp. 2d at 586</u> (internal citations omitted). <u>See Also</u>, <u>Fireman's Ins. Co. v. Todesca Equip., 310 F.3d 32, 37</u> (R.I. 2002) ("appellants were required to allege and prove fraud or collusion in order to avoid repayment of the claim paid by [the surety]."); <u>Engbrock, 370 F.2d at 787</u> ("But neither lack of diligence nor negligence is the equivalent of bad faith; and improper motive, which is not alleged, is an essential element of bad faith."); <u>Frontier Ins. Co. v. International, Inc., 124 F. Supp. 2d at 1214</u> ("In the suretyship context, lack of good faith carries an implication of a dishonest purpose, a conscious doing of wrong."; <u>Travelers Casualty and Surety Co. of America, Inc. v. Jadum Const. Co., 2003 U.S. Dist. LEXIS 11861 (D. Mass 2003)</u> ("A showing of bad judgment, negligence or insufficient zeal is not sufficient.") (citing Black's Law Dictionary 139 (6th ed. 1990)) ("Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity."); <u>Frontier Ins. Co. v. Int'l Inc., 124 F. Supp. 2d 1211, 1214 (N.D. Al. 2000)</u> ("the law is clear that alleged overpayment or negligent investigation of claims does not

constitute bad faith in the suretyship context"); *PSE Consulting Inc., v. Frank Mercede & Sons, Inc., 267 Conn. 279, 838 A.2d 135, 153 (Conn. 2004)* ("The failure to investigate, standing alone and not accompanied by other evidence of an improper motive, is not enough to constitute bad faith.").

Here, Defendants have not asserted bad faith as an affirmative defense and the pleadings are devoid of any argument that Plaintiff's actions were in bad faith. Consistent therewith, discovery has not revealed any facts to support an argument that the surety's actions were executed in bad faith. In these circumstances, summary judgment in favor of the surety is appropriate. *Developers Sur. & Indem. Co. v. Chrisellie Corp., 497 F. Supp. 3d 9, 26 (W.D. Pa. 2020)*(Summary Judgment awarded in the absence of a showing of bad faith).

Without evidence of bad faith, Defendants are unable to refute the effect of the prima facie clause which establishes the fact and extent of liability on the Defendant.

The Declaration of Lisa Frasier, on behalf of Old Repubic, confirms that Exh. 4A represents the most accurate summary of the amounts paid by Old Republic as of the filing of this Motion. *(Mot. Exhs. 4, ¶¶ 12-14, 4A).*

Here, there can be no doubt that Old Republic is entitled to indemnification from the Defendant for all losses sustained under the Bonds as well as the expenses incurred for consultants, attorney's fees and costs, including those incurred in prosecuting this case. No dispute of material fact exists and Surety is entitled to judgment as a matter of law.

### V.   CONCLUSION

WHEREFORE, Old Republic respectfully requests this Court to award Summary Judgment in favor of Plaintiff against the Defendant in the sum of $2,456,694.64, plus any

other claims and/or attorney's fees paid after January 14, 2025, as well as interest, costs and for such other and further relief as this Court may deem just and proper.

                                      Respectfully Submitted:

                                      DICKIE, McCAMEY & CHILCOTE, P.C.

BY:     <u>/s/ W. Alan Torrance, Jr.</u>
          W. Alan Torrance, Jr., Esquire
          *Admitted Pro Hac Vice*
          PA ID #49592
          Two PPG Place, Suite 400
          Pittsburgh, PA 15222-5402
          412-392-5272
          atorrance@dmclaw.com

          James R. Andrzejewski, Esquire
          PA ID #308153
          1650 Arch Street, Suite 2110
          Philadelphia, PA 19103
          jandrzejewski@dmclaw.com

*Counsel for Plaintiff Old Republic Surety Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Motion for Summary Judgment has been served on this 17th day of January, 2025, via the Court's ECF system to the following counsel of record:

David B. Smith, Esquire
dsmith@skhlaw.com
Michael P. Donohue, Esquire
mdonohue@skhlaw.com
Smith Kane Holman LLC
112 Moores Road – Suite #300
Malvern, PA 19355

DICKIE, McCAMEY & CHILCOTE, P.C.

By: /s/ W. Alan Torrance, Jr.
W. Alan Torrance, Jr., Esquire